The opinion of the court was delivered by
Marr, J.
The Workingmen’s Bank proceeded via executiva on certain notes of Blaise Lannes, representing the credit portion of the price of two lots of ground, sold by Martin, Lannes to his brother Blaise, in October, 1873, secured by vendor’s mortgage on the property. Pierre Lannes injoined the sale, claiming to be the owner of the two lots, in virtue of the sale and conveyance made to him by the tax collector, in August, 1875, and the deed subsequently made to him by the Auditor of Public Accounts, for the taxes of 1873, due by Martin Lannes.
The bank, in answer to this injunction suit, alleged the nullity of the tax sale. The district court decided that the title conveyed to Pierre Lannes could not be attacked otherwise than by direct action, and perpetuated the injunction, reserving.to the bank the right to proceed by direct action; and this judgment was affirmed on appeal. 29 An. 112.
The bank then brought this suit against Blaise Lannes and Pierre Lannes, alleging the nullity of the tax sale; and praying to have it declared void, and for judgment against Blaise Lannes, for the amount of the mortgage debt, with recognition of the right of vendor’s mortgage on the property. • .
Defendants excepted that the title of Pierre Lannes could not be disturbed without making the State, his vendor, a party; that the allegations of the petition are too vague to enable defendants to answer until *872 plaintiff’s cause of action is set forth with more certainty; and that the petition discloses no cause of action.
These exceptions were properly ovei ruled. The State can not be sued except with its consent, specially granted. The allegations of the petition, the claims of plaintiff, and the causes of nullity, are set forth in very clear and distinct terms; and, if true, they show perfect cause of action.
Defendants then plead the general issue; and the judgment of the court, from which they have appealed, declared the nullity of the title of Pierre Lannes; and condemned Blaise Lannes to pay the mortgage debt, as prayed for in the petition, reserving to Pierre Lannes the right to claim such sums as he may have legally paid for taxes on the property.
Eight causes of nullity are set out in the petition:
First — That the tax sale was made in violation of the laws of the State, and particularly act No. 7 of the extra session of 1875.
Second — That the property .was not assessed according to law, neither the name of the owner nor the proper description being given.
Third — That demand and notice to pay the taxes was never given according to law.
Fourth — That no legal seizure was ever made, no legal notice of seizure, no legal recordation of seizure caused to be made.
Fifth — That the owner of the property owned personal property liable to seizure of sufficient value to pay the taxes.
Sixth — That no legal advertisement of the sale of the property was made.
Seventh — That no legal deed or act of sale was ever passed, executed, or recorded.
Eighth — That no money was paid by Pierre Lannes; that the sale was fraudulent, made at the instance of Blaise Lannes, to defraud petitioner; and Blaise Lannes is now and always has been the true owner, notwithstanding said pretended sale.
The act of 1875, p. 106, is entitled “an act to relieve delinquent taxpayers from the payment of penalties in certain cases.” The ñrst and second sections relate exclusively to taxes due on lands overflowed during the flood of 1874; and the delinquents are relieved of all penalties, provided the past due taxes are paid on or before the first of December, 1875. The third section declares that “upon payment of the principal or the amount of the tax itself on or before the first of November, 1875, all interests and penalties thereon shall be remitted on all taxes due throughout the State.”
The last clause of section one declares “ that the provisions of this act shall apply only to taxes due on lands overflowed during the flood *873 of 1874.” Construed strictly, this would make the third section nugatory; but the third section is a later expression of the legislative will. The statute is remedial; and it must be liberally interpreted, and in such manner as to give effect to the whole. Day of grace is given to the first of December, 1875, only to those owing taxes on lands overflowed in 1874, on their complying with the requirements of section two, stating under oath that the lands were overflowed, and that they were unable to derive revenue from them sufficient to support themselves and families, and to pay the taxes due.
Section three is broader; and it covers delinquents throughout the State; the only difference being that delay is given them to the first of November, one month less than to the sufferers by the flood; and they are not required to make oath or to do any thing else except to pay the amount of the tax itself, without interest or penalty, on or before the first day of November, 1875.
Section four repeals all contrary or inconsistent laws, and gives effect to the act from its passage, May, 1875. Certainly any law which authorized or enabled a tax collector to compel the payment of taxes due at the date of this act, by any means or process, before the first of November, 1875, would have been not only inconsistent with the act of May, 1875, but would have left the tax payer at the mercy of the tax collector, the will of the Legislature to the contrary notwithstanding.
Act No. 47 of 1873, section one, authorized tax collectors, after the public notice required by law, to give ten days written or printed notice to the owner to pay the tax assessed on his property, after which delay, if the tax was not paid, the tax collector might seize the property, by recording a description of it, with the amount due, in the mortgage book of the parish, and on the fourth day of such recordation “ shall proceed to sell said property, without legal process, after advertising three times, within ten days, in the official journal. Provided, that when personal property sufficient in amount is found to satisfy the State’s claim against such tax payer, the same shall be seized to satisfy such claim in preference to real estate.”
It was under this statute that the tax collector in the Sixth Municipal District sold the property in question, on the fourth of August, €875.
There is nothing in the deed or the record to show that any written or printed notice to pay the tax was ever given to the owner, or agent of the owner of this property, or to any other person whomsoever.
On the twelfth July, 1875, an entry was made in the mortgage book of the parish of Orleans, beginning “ By virtue of a writ of seizure and sale issued by John Garstcamp, tax collector, * * * in obedience to section one of act No. 47, * * * the said tax collector has seized and taken into his possession the following described property to pay and *874 satisfy the amount enumerated and due by the owner thereof for State taxes for the year 1873, to wit:
2129. — Martin Lenas. Cancelled August 6, 1875, J. M. Oonway, Deputy Rec.
Lots Nos. 5 and 6, square No. 13, bounded by Tchoupitoulas, Jersey, Marengo, and Milan streets, measuring sixty feet front on Tchoupitoulas by a depth of 117 feet.”
Next follows the advertisement-in the official journal of twenty-seventh July, third, fourth August:
“Tax Collector's Sale, No. 2129. * * * State of Louisiana vs. two lots of ground, fronting on Tchoupitoulas street, in square No. 113, assessed in the name of Martin Lenas.” * * * “I will proceed to sell at public auction, at my office, No.-Berlin street, in the Sixth District, , * * • * on August 4, 1875, x * * for taxes of 1873, amounting to $40 60, together with all costs, penalties, and charges. At said sale the property will not be adjudicated unless the bid is for .a-sufficient amount to satisfy the aforesaid claim, together with the penalties thereon, and all costs and charges which may have accrued. The purchaser at this sale will be put in immediate possession.”
The next is the tax collector’s deed, dated fifth August, 1875, reciting the sale and adjudication to Pierre Lannes, for the taxes due by Martin Lenas, for the price of $110 cash, of which $58 85 were applied to the taxes, costs, and charges, and $51 15 remained in the hands of the tax collector as “ overplus,” to use his word; and on the fourteenth February, 1876, the. Auditor of Public Accounts conveyed the property to Pierre Lannes. In this deed it is stated that the property had belonged to Martin Lannes, in whose name it was assessed for the taxes of 1873; and the Auditor conveys to Pierre Lannes all the right, title, and interest of Martin Lannes in and to the property.
And this is the title which Pierre Lannes sets up and relies upon against the creditors of his brother having vendor’s mortgage on the property for four fifths of the purchase price.
We do not think it necessary to proceed further in the investigation of this case. It exhibits an outrageous violation of the right of property by the tax collector; a bold defiance of the remedial act of 1875„.which Blaise Lannes would hardly have submitted to if his mortgage notes for the price had been paid.
The sale on the fourth of August, 1875, for the taxes of 1873, was a nullity. It is to no purpose to say that Blaise Lannes, the owner, did not complain. His creditors have rights of which he can not deprive them; and when a title adverse to the claim set up by them is'interposed, they may oppose the absolute nullities of that title, even if he should prefer to waive them in favor of his brother. The tax collector was divested by the act of 1875 of all power to enforce the collection of *875 taxes by sale or otherwise before the expiration ol the delay fixed by the Legislature, first November, 1875.
It would not have been lawful to sell property assessed in the name of Martin Lannes, belonging to Blaise Lannes, for taxes due by Martin Lenas; nor under a seizure recorded as against Martin Lenas, nor an advertisement describing it as the property of Martin Lenas; nor was it lawful for the Auditor to convey the property of Martin Lannes in. confirmation of a sale and conveyance by the tax collector of the property of Martin Lenas. We do not think the tax collector could legally have made the sale at his office, especially under an advertisement which gave no other description of the place than “ at my office, number Berlin street, Sixth District: ” nor do we understand the. act of 1873 as authorizing the sale by the tax collector without the previous ten days written or printed notice to the owner or his agent to pay the taxes.
In forced alienations, without legal process, all the formalities prescribed must be strictly observed under pain of nullity; and it must appear that all has been done that the law requires to authorize the-sale, and to make it complete and perfect. It should be shown, in a case like this, by the recitals in the deed, if not otherwise, that the notices required by law had been given. Nothing would justify the tax collector in selling two lots of ground to pay the taxes when one .would suffice; nor to retain the “ overplus ” resulting from an excessive sale.
Pierre Lannes knew that this property did not belong tp Martin Lenas. The act of sale by Martin Lannes to Blaise Lannes was recorded on the day of its date, October 10, 1873; and the tax collector- and Pierre Lannes, were, by operation of law, affected with notice and knowledge of the title as it stood upon the public records. The tax collector knew that the property had been assessed in the name of Martin Lannes; and the use of the fictitious name of Martin Lenas, in the recording of the seizure, and in the advertisements and the tax collector’s deed, can not be attributed either to error or ignorance on the part of the tax collector or of Pierre Lannes. Perhaps it was designed, certainly it tended, to conceal the fact that the property of Blaise Lannes was about to be sold for the taxes of 1873, assessed against the-former owner, Martin Lannes, and assumed by his vendee, Blaise Lannes. •
After the six months allowed for the redemption had expired, when, the Auditor made the final confirmative conveyance, he gave correctly the name of Martin Lannes as the person who was the owner against-whom the assessment for the taxes of 1873 was made: and as the person, whose property was seized and sold by the tax collector, on the fourth August, 1875, for the taxes so assessed, and purchased by Pierre Lannes-, and this conveyance was not of property belonging to Martin Lenas,, *876 the fictitious tax payer, but of “ all the right, title, and. interest which the said Martin Lannes has or had in or to the same.”
The pretensions of Pierre Lannes have the support neither of good , faith nor any equitable consideration whatsoever. They are equally unsupported by the law under which he claims; and the judge of the ■district court has done justice between the parties on the issues made and submitted to him.
The judgment appealed from is therefore affirmed with costs.